UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

GREGORY PAPADOPOULOS,

                    Plaintiff,                    10 Civ. 7980 (RWS)

    -against-                                     OPINION

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

------------------------------------X

**Sweet, D.J.**


        Plaintiff  Gregory  Papadopoulos  ("Papadopoulos"  or

"Plaintiff")  has  moved  for  summary  judgment  in  this  action

seeking  Social  Security  disability  benefits.    Social  Security

Commissioner,  Michael  Astrue,  ("Defendant"  or  "Commissioner")

has  cross  petitioned  both  for  an  order  dismissing  Plaintiff's

claim  for  review  of  the  Commissioner's  decision  denying  him

disability  benefits  as  well  as  for  an  order  dismissing

Plaintiff's  non-Social  Security  causes  of  action.


        These  motions  were  marked  fully  submitted  on  July  20,

2011,  and  August  10,  2011,  respectively.

For the reasons set forth below, this case is remanded for further evidentiary proceedings and Plaintiff's non-Social Security claims are dismissed.

## I. Prior Proceedings and Facts Alleged

Plaintiff earned a Master's of Business Administration from Columbia University with honors and previously worked as the president and owner of a financial trading company. (Tr. 28, 79-80, 83, 177.)[1] Due to the dates of his previous work activity, the date that Plaintiff was last insured for disability insurance benefits was June 30, 2001. (Tr. 70, 72.)

On November 24, 2008, Plaintiff protectively applied for disability insurance benefits, alleging that he was disabled as of January 1, 2000. (Tr. 62-71.) In a form completed as part of his application for benefits, Plaintiff alleged that he was disabled due to severe depression, high blood pressure, and vein problems on both legs. (Tr. 78.) He stated the he stopped working in 2000 due to both his medical condition and the closing of the company that he owned. (Tr. 63, 78.) Specifically, he alleged that in 1998 or 1999, the Federal

---

[1]     Citations to the administrative record are denoted "Tr."

2

Bureau of Investigation (the "FBI") "shut down my business and that was the end of it." (Tr. 178.) Plaintiff stated that "[s]ince 1998, and as a result of harassment by some conspirators, I can not [sic] do anything right," he could "only think about getting even," and he was extremely depressed. (Tr. 101.) He also alleged that he had a shoulder injury. (Tr. 99, 101.)

In other reports to the Social Security Administration, Plaintiff indicated that he was evaluated by Dr. Ishman in 2008 for depression and other medical conditions and that he received treatment at Memorial Sloan-Kettering and Mount Sinai Hospital in 1991 and 1995 for a non-cancerous lung tumor. (Tr. 80-83, 89-90.) Plaintiff affirmed that no one else had medical records or information about his conditions and that he was not scheduled to see any medical source. (Tr. 82, 90.) He stated that he received treatment for depression in 2000 from three doctors, but he did not recall their names or addresses. (Tr. 84.) He further stated that one of the three doctors was a court-appointed psychiatrist who told him that he was paranoid. (Id.)

3

Plaintiff's social security disability benefits application was initially denied on the basis that "THERE IS INSUFFICIENT [medical evidence of record] IN FILE TO ADEQUATELY ASSESS CLMT. FUNCTIONING PRIOR TO [date of last insurance], THEREFORE CLAIM DENIED AS SUCH." (Tr. 36).

On February 9, 2010 a hearing was held before Administrative Law Judge Mark Solomon (the "ALJ") (Tr. 16-34, 176-78). At that hearing, the ALJ advised Papadopoulos of his right to representation, and Plaintiff stated that he wished to proceed without representation. (Tr. 18-21.) Plaintiff testified that after he started complaining about harassment by the FBI, and prior to the date he was last insured (June 30, 2001), he saw a psychiatrist (the "First Psychiatrist") four or five times at the demand of his former wife, prior to their divorce. (Tr. 24-26.) Plaintiff alleged that the First Psychiatrist prescribed him medication and assured him that the drugs would "make the FBI go away." (Tr. 24-25.) Plaintiff further testified that he saw a second psychiatrist (the "Second Psychiatrist") who prescribed medication that made him lethargic. (Tr. 25.) He reported that he did not remember the names of either of the two Psychiatrists, though he reported that one was located at Mount Sinai and the other had an office

4

on the southwest corner of 96th street and Park Avenue. (Tr. 25-26.)

Plaintiff stated that he was not currently seeing a psychiatrist or psychologist because he did not have funds for that or any insurance.  (Tr. 24.)  At that time, Plaintiff stated that he had no money for psychiatric medications and that "no medication will make the FBI go away."  (Tr. 25.)

The  ALJ  questioned  Papadopoulos  extensively  with respect to the First and Second Psychiatrists:

> Q:   [W]ould you like me to hold the record open for
>      you to try to get the names of those two doctors
>      that you saw prior to 2001 which you can send to
>      me  and  then  I'll  try  to  get  those  records?
>      Unless  you  think  they're  not  around  anymore.
>      That, that's up to you.
>
> A:   The one, I don't know if they're around anymore.
>
> Q:   Would you like the opportunity to try to see if
>      you have the --
>
> A:   I can try but I don't know if I'm going to be
>      able to find anything.
>
> Q:   Okay.  Well, that's --
>
> A:   That goes 12 years back.
>
> Q:   -- that's okay.  Tell you what I'm going to do.

A:   But I also don't, Your Honor, with all due respect I don't want to stall this.  I applied about 14 months ago, I'm eager to take this case to the Federal Courthouse.  Eager.

Q:   Okay, So, so pretty much you say you don't think you'd be able to get the records?

A:   I can try but I, I'd like to get going, you know, with all due respect.

Q:   That's, sir, it's your case.  You know, I'm, you know, my job is to try to help you as much as possible by getting records I can so I can make an informed decision.

***

Q:   Do you have any questions before we go today, sir?

A:   Do you want me to try to get those names?

Q:   Would you like, would you like to?  Well, here's - no, tell you what.  Here better yet, I'll give you a chance to do that.  We're going to give you an envelope with my address on it. . . . I'll give you two weeks to get the names and sent it in and get those.  I'll try to subpoena their records to see what they have.  If you don't get me the names in two weeks I'll just have to go with what I have, okay?

A:   Um-hum.  Okay.

(Tr. 30-33.)


          Papadopoulos repeatedly attempted to persuade the ALJ to permit him to place legal documents pertaining to his lawsuits against the FBI and other proceedings into the

administrative record (Tr. 20-21, 27, 31-32).   After rejecting this proposition, the ALJ again confirmed that he was going to give Plaintiff an envelope with his name on it and two weeks to submit the names of the First and Second Psychiatrists, and that if the ALJ received those within two weeks, he would subpoena those records and make his decision based on that.   (Tr. 32-33.) From the administrative record, it does not appear that Papadopoulos submitted the names of either Psychiatrist to the ALJ. (See Tr. 11.)

On April 20, 2010, the ALJ denied Plaintiff's claim (Tr. 5-15).   Thereafter, Plaintiff requested review by the Appeals Council, which affirmed the decision of the administrative law judge on August 19, 2010. (Tr. 1-3.)

On October 13, 2010, Papadopoulos filed the instant action.   In it he seeks review of the decision of the ALJ pursuant to the Social Security Act, 42 U.S.C. § 405(g) and/or § 1383(c)(3), as well as relief under the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"), the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA"), Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388

7

(1971), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO").

Papadopoulos' affidavit in support of his complaint alleges that he has been the victim of harassment and a corrupt FBI investigation for the last thirteen years. According to Plaintiff, the Fanjul Family of Palm Beach (alternately termed the Palm Beach Mafia), which he describes as a mafia-type Cuban family with interests in prostitution and drug trafficking, has together with the FBI sought to insure that he cannot work in hopes of exhausting his resources. In particular, Plaintiff alleges that in 2000, together the FBI and Fanjul family shut down Revcon, Inc., Plaintiff's proprietary trading firm, by ensuring Plaintiff's trades would not clear with any broker. He alleges that he therefore became disabled, and that he has not been able to produce any income since that time. Plaintiff asserts that the FBI and Fanjuls have additionally interfered with his attempts to receive Social Security benefits, for example by blocking his mail, screening his communications, preventing him from retaining a lawyer, and otherwise interfering with the administrative process.

8

In the following years, Plaintiff has filed a number of actions against the FBI and Fanjuls, as well as an individual named Mineeva, who Plaintiff alleges is a prostitute and co-conspirator of the Fanjuls and FBI.  These actions include four in the Southern District of New York, Papadopoulos v. United States, 08 Civ. 11256 (RMB) (RLE), Papadopoulos v. Mineeva, 10 Civ. 4882 (LAP), Papadopoulos v. Federal Bureau of Investigation, 10 Civ. 4574 (LAP), and Papadopoulos v. Fanjul, 10 Civ. 4579 (LAP), as well as one in the Southern District of Florida, Papadopoulos v. Federal Bureau of Investigation, 01 Civ. 8659 (WPD).[2]

## II. Plaintiff's Social Security Claims

### A. Legal Standard

Title II of the Social Security Act provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1).  These benefits are distinct from those available to indigent persons under the Supplemental Security Income program.   42 U.S.C. §  1382(a).   With regard to

---

[2]    This complaint was filed on July 20, 2001.

establishing disability under the Social Security Act, the statute provides in relevant part:

> [A]n individual shall be determined to be under a disability . . . if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2)(A).


In this respect, a plaintiff bears the burden of demonstrating disability. See Parker v. Harris, 626 F.2d 225, 230-31 (2d Cir. 1980). The Act defines disability as the inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment that could be expected to result in death or that has lasted or could be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Secretary has established a five-step sequential evaluation process for evaluating disability claims. See 20 C.F.R. § 404.1520. Those steps are as follows: First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether the claimant has an impairment which meets or equals one listed in Appendix 1 of the regulations. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987).[3]

---

[3]     The claimant bears the burden of proof at the first four steps, i.e., through the determination of his ability to perform his past relevant work despite a severe impairment. The Secretary has the burden as to the last step, i.e., the determination of the claimant's ability to perform other work available in the national economy. See, e.g., Berry v. Schweiker, 675 F.2d at 467; Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 642 (2d Cir. 1983).

The Social Security Act provides that upon review of the Commissioner's decision, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). During judicial review, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Id.; see also Richardson v. Perales, 402 U.S. 389, 401 (1971). The Commissioner's decision should only be set aside if it is "'based upon legal error or not supported by substantial evidence.'" Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Berry v. Schweiker, 675 F.2d at 467)).

Substantial evidence in this context has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. at 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). When reviewing the record for substantial evidence, courts "'review the record as a whole. This means that in assessing whether the evidence supporting the Secretary's position is substantial, we will not look at that evidence in isolation but rather will view it in light of other

12

evidence that detracts from it.'" Alson v. Sullivan, 904 F.2d 122 (2d Cir. 1990) (quoting State of New York v. Secretary of Health and Human Services, 903 F.2d 122, 126 (2d Cir. 1990)). Moreover, "[t]he court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a de novo review." Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991) (citation and internal quotation marks omitted); see also Parker v. Harris, 626 F.2d at 230-31 ("It is not the function of a reviewing court to determine de novo whether the claimant is disabled.").

B. Discussion

In this case, the ALJ applied the Commissioner's sequential evaluation procedure. See 20 C.F.R. § 1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from January 1, 2000, his alleged onset date, through June 30, 2001, the date he was last insured for benefits. (Tr. 10.) At the second step, the ALJ found that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment during the relevant period. (Id.) The ALJ reasoned that there were no medical records to substantiate Plaintiff's

13

allegations of a severe impairment, i.e., an impairment or combination of impairments that significantly limited his ability to perform work-related activities, prior to June 30, 2001. (Tr. 10-12.) The ALJ concluded that Plaintiff had not met his burden at step two and, thus, was not disabled for the period at issue, January 1, 2000 through June 30, 2001. (Tr. 12.)

An impairment is "severe" when it is 1) medically determinable, and 2) imposes significant limitations on the mental or physical ability to perform basic work-related activities. See 20 C.F.R. §§ 404.1508, 404.1521(a); see also 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . we will find that you are not disabled."). Medical evidence is necessary at step two, which is underscored in the Commissioner's administrative ruling SSR 85-28, which states:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is

14

> inherent in the medical evaluation process itself. At the second step of the sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.

SSR 85-28.

In this case, the following medical record evidence exists for the period prior to the alleged onset of disability, January 1, 2000: Treatment records from Memorial Sloan Kettering Cancer Center regarding the removal of a bronchial lipoma in 1992 and follow-up evaluations in 1993. (Tr. 112-33.)

No medical record evidence exists for the period at issue—January 1, 200 to June 30, 2001.

The following medical record evidence exists from after the date of last insurance on June 30, 2001:

Treatment notes from Mount Sinai Hospital indicate that Plaintiff underwent surgical treatment of a right inguinal hernia on August 5, 2005 (Tr. 137-39) and that he underwent left shoulder rotator cuff surgery on July 5, 2007. (Tr. 135-36.)

15

On April 17, 2008, Dr. Raymond Ishman of the Ishman
Center for Age Management, noted his review of available records
and phone conversations with Plaintiff. (Tr. 104-05.)   Dr.
Ishman observed that Plaintiff's past medical history included
hypertension and colon polyps (Tr. 104), and he identified
Plaintiff's past surgical history as including removal of a
bronchial lipoma and two unsuccessful rotator cuff surgeries.
(Id.)   Dr. Ishman diagnosed Plaintiff with andropause,
osteopenia, hypertension, and hyperlipidemia, and found that
Plaintiff was overweight. (Id.)

On July 8, 2008, Dr. Ishman performed a physical
examination of the Plaintiff. (Tr. 105-07.) Papadopoulos
reported that he had been under excessive stress over the past
nine months due to a failed relationship, and he complained of
some depression. (Tr. 105.)   Dr. Ishman reported that Plaintiff
was well-appearing, alert and oriented, and in no acute
distress. (Id.)      Dr. Ishman diagnosed andropause-low
testosterone, hypertension, osteopenia-low bone density,
dyslipidemia-high cholesterol, depression, and left ventricular
hypertrophy-enlarged heart. (Tr. 106.)   Dr. Ishman prescribed
human chorionic gonadotropin (HCG), Arimidex, testosterone
cypionate, Lotrel, Wellbutrin, Finasteride, and supplements.

16

(Tr. 106.)   Dr. Ishman's final note, dated November 17, 2008, indicates that Plaintiff dropped out of the program due to lack funds.   (Tr. 107.)

In an undated letter to the state agency disability analyst, Dr. Ishman wrote that he had examined Plaintiff once, and had several phone conversations with him. (Tr. 103.)   Dr. Ishman prescribed Wellbutrin for depression, which Plaintiff indicated he had been on in the past. (Id.) Dr. Ishman stated that he did not see Plaintiff for depression, he did not have the expertise to substantiate a claim of disability for depression or any other reason, and he did not intend to complete any disability forms. (Id.)

On December 26, 2008, state agency psychologist L. Meade completed a psychiatric review technique form. (Tr. 140-53.) Dr. Meade concluded that there was insufficient evidence upon which to determine that Plaintiff was disabled. (Tr. 140.)

On December 2, 2009, Haruyo Fujiwaki, Ph.D. performed a consultative psychiatric evaluation at the request of the Commissioner. (Tr. 154-57.)   Plaintiff reported that he was obliged to close his business due to a conspiracy and that he

17

saw a psychiatrist in a private office on a weekly basis for two months in 1998, due to depression. (Tr. 154.)  Specifically, Papadopoulos reported that he had been suffering from "psychological trauma inflicted upon him by the FBI" and that as a result his depression had worsened. (Id.)  Dr. Fujiwaki noted that Plaintiff conveyed that the FBI had been monitoring his telephone communication, put cameras outside his house, tried to sabotage his business, harassed his son, and caused the divorce from his wife. (Id.)  Dr. Fujiwaki diagnosed Plaintiff with depressive disorder not otherwise specified ("NOS"); anxiety disorder NOS; schizophrenia, paranoid; and alcohol dependence. (Tr. 157.) Based upon this examination, Dr. Fujiwaki concluded that, vocationally, Plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently, and maintain attention and concentration to a certain extent; but he may have difficulty maintaining a regular schedule, learning new tasks, performing complex tasks, and making appropriate decisions, due to persecutory delusions, and may have difficulty relating with others and dealing with stress appropriately. (Tr. 156.)  Dr. Fujiwaki stated that Plaintiff's difficulties were caused by psychotic symptoms and alcohol dependence. (Id.) He further concluded that the results of the examination appeared to be consistent with psychiatric problems

18

and substance abuse problems, and these may significantly interfere with Plaintiff's ability to function on a daily basis. (Id.) As Defendant concedes, Dr. Fujiwaki's examination, diagnoses and opinion indicate that Plaintiff had a mental impairment which significantly limited his ability to perform basic work-related activities by that time. (Def. Summ. J. Mem. 13; see also Tr. 154-57.)

On the same date, at the request of the Commissioner, Plaintiff was examined by Dr. Robert Dickerson, a consultative physician. (Tr. 161-64.) Dr. Dickerson noted Plaintiff's chief complaint as "I suffer from a psychological trauma inflicted upon me by federal agents" as well as his history of high blood pressure and other heart disease. (Tr. 161.) Plaintiff reported no medical problems due to hypertension. (Id.) Dr. Dickerson diagnosed Papadopoulos with depression and post-traumatic stress syndrome, and concluded that he had no physical limitations. (Tr. 163-64.)

Thus, the record reflects a twelve-year gap in medical treatment that encompassed the period from January 1, 2000, when Plaintiff alleges his disability began, through June 30, 2001,

19

when Plaintiff was last insured for disability insurance benefits.

Defendant argues that for this reason, the ALJ properly found that Plaintiff did not have a medically determinable impairment during the period at issue. (See Tr. 10-12.) The Commissioner is correct that the evidence of Plaintiff's disability after June 30, 2001 cannot serve as the basis for a finding of disability before the end of the period at issue because Plaintiff had to be insured when his disability began. See 20 C.F.R. § 404.131 (a) ("you must have disability insured status in the quarter in which you become disabled"); Arnone v. Bowen, 882 F.2d 34, 37-38 (2d Cir. 1989) ("regardless of the seriousness of his present disability, unless Arnone became disabled before March 31, 1977 [his date last insured], he cannot be entitled to benefits." (citations omitted)). Therefore, without more, Dr. Fujiwaki's report, which diagnosed Plaintiff with depressive disorder, NOS; anxiety disorder, NOS; and schizophrenia, paranoid (Tr. 154-57), cannot serve as a basis for a disability finding before June 30, 2001.

Instead, remand is appropriate here. "'Where there are gaps in the administrative record . . . we have, on numerous

occasions, remanded to the [Commissioner] for further development of the evidence.'" Pratts v. Chater, 94 F.3d at 39 (quoting Parker v. Harris, 626 F.2d at 235) (alteration in original); see also Rosa v. Callahan, 168 F.3d 72, 82 (2d Cir. 1999) (same); Sobolewski, 985 F.Supp. at 314 ("Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order.").

"It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding,'" even if the claimant is represented by counsel. Pratts v. Chater, 94 F.3d at 37 (quoting Echevarria v. Secretary of HHS, 685 F.2d 751, 755 (2d Cir. 1982)); see also Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999); Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999); Perez v. Chater, 77 F.3d 41, 47 (1996). The regulations describe this duty stating that, "[b]efore we make a determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d). The regulations also state that, "[w]hen the evidence we receive

21

from your treating physician . . . or other medical source is inadequate for us to determine whether you are disabled, . . . [w]e will first recontact your treating physician . . . or other medical source to determine whether the additional information we need is readily available."   20 C.F.R. § 404.1512(e).

Defendant notes that there is no evidence that Papadopoulos complained to Dr. Ishman that he had been harassed or was the victim of a conspiracy against by the FBI (see Tr. 104-07), while one year later, Plaintiff voiced these complaints to Dr. Fujiwaki. (See Tr. 154.) Defendants argue that "[t]his suggests that plaintiff's impairment became severe or disabling from 2008 to 2009, several years after he was last insured for benefits."   (Def. Summ. J. Mem. 13.)   This is speculation at best, given the multi-year gap in the record.

While the ALJ provided Plaintiff an opportunity to submit medical evidence of his disability pertaining to the relevant period, the ALJ had an affirmative obligation to develop the administrative record.   That the ALJ did not take further steps to develop the record here is particularly troubling in light of the obvious gap in medical evidence of record for the relevant period, Plaintiff's testimony not only

22

regarding the possibility of relevant medical evidence including one treating physician who Plaintiff testified proscribed him medication to "make the FBI go away," but also Papadopoulos' testimony relating to where those doctors were located, as well as the ALJ's clear understanding of the potential import of those records.  (Tr. 30-33.)[4]

In sum, the ALJ failed to develop the record sufficiently to make any appropriate determination. Specifically, the ALJ failed to obtain any, let alone adequate information, from two possible treating psychiatrists during the relevant period.  Accordingly, the ALJ failed to fulfill his duty in Plaintiff's case.  See Pratts v. Chater, 94 F.3d at 37. Because "further findings" would so plainly help to assure the proper disposition of Papadopoulos' claim, remand is appropriate in this case. Id. at 39.[5]

---

[4]    Additionally, the first of Plaintiff's many cases against the FBI was filed in July of 2001, not long after the date of his last insurance.  While this fact is not part of the administrative record and is in any event insufficient to demonstrate a disability, as non medical evidence from outside of the relevant period, it underscores the need for the ALJ to construct a full record of the relevant period in order to ensure the proper disposition of Plaintiff's claim.

[5]    The Commissioner argues that remand is not appropriate in order to consider new and material evidence on a showing of good cause.  However, "'[t]his is a case where the Court has found that the ALJ failed to develop a sufficient record to determine whether there is substantial evidence to support the denial of the plaintiff's claim of disability. It is not a case where the Commissioner [or claimant] seeks a remand for the consideration of new and material evidence which was omitted from the record for good cause.'" Rosa v. Callahan, 168 F.3d at 83 n.8 (quoting Almonte v. Apfel, 1998 WL 150996, *9 (S.D.N.Y. March 31, 1998)).

## III. Plaintiff's Remaining Claims

For the reasons set forth below, Plaintiff's non-Social Security claims are dismissed.

## A. Legal Standards

A facially sufficient complaint may be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) if the asserted basis for jurisdiction is not sufficient. See TM Patents, L.P. v. Int'l Bus. Machs. Corp., 121 F.Supp.2d 349, 367-68 (S.D.N.Y. 2000); Peterson v. Continental Airlines, Inc., 970 F. Supp. 246, 249 (S.D.N.Y. 1997). Once subject matter jurisdiction is challenged, the burden of establishing jurisdiction rests with the party asserting that it exists. See Thomson v. Gaskill, 315 U.S. 442, 446 (1942) (citations omitted). The party asserting subject matter jurisdiction has the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see also Gallo v. United States, Dep't of Treasury, Internal Revenue Serv., 950

24

F. Supp. 1246, 1248 (S.D.N.Y. 1997) (citing <u>Robinson v. Overseas Military Sales Corp.</u>, 21 F.3d 502, 507 (2d Cir. 1994)).

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152 (2d Cir. 2002) (citing <u>Gregory v. Daly</u>, 243 F.3d 687, 691 (2d Cir. 2001)). Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Ashcroft v. Iqbal</u>, -- U.S. --, 129 S.Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 570). In other words, plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." <u>Twombly</u>, 550 U .S. at 570.

In addressing the present motion, the Court is mindful that Papadopoulos is proceeding <u>pro se</u>. "Since most pro se

25

plaintiffs lack familiarity with the formalities of pleading requirements, [courts] must construe pro se complaints liberally, applying a more flexible standard to evaluate their sufficiency than [they] would when reviewing a complaint submitted by counsel." Lerman v. Bd. of Elections in City of N.Y., 232 F.3d 135, 139-40 (2d Cir. 2000). Courts "interpret [pro se pleadings] 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 279 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). However, "pro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

B. Discussion

i. *Bivens* Claims

At the threshold, the Court lacks subject matter jurisdiction over any Bivens claim made against the United States or FBI in this case. The only named defendant in this action is the Commissioner of Social Security. At the same

26

time, the complaint includes allegations that when interpreted liberally could be construed as alleging that Plaintiff's constitutional rights were violated by the FBI.

Under the doctrine of sovereign immunity, the United States "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Mitchell, 445 U.S. 535, 538 (1980) (citation and quotation marks omitted). Accordingly, absent a waiver of sovereign immunity, federal courts lack subject matter jurisdiction over a plaintiff's claims against the United States. See FDIC v. Meyer, 510 U.S. 471, 475 (1994). Courts may not find a waiver of sovereign immunity to exist unless Congress has "'unequivocally expressed' [the waiver] in statutory text." Adeleke v. United States, 355 F.3d 144, 150 (2d Cir. 2004) (quoting United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992)). In the absence of such a waiver, the court lacks jurisdiction. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Sovereign immunity protection applies not only to the United States per se, but also to "a federal agency or federal officers [acting] in their official capacities." Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994).

27

In Bivens, 403 U.S. 388, the Supreme Court recognized a private cause of action for damages against a federal official in his personal capacity for conduct violating the Constitution. However, the United States has not waived its sovereign immunity with respect to constitutional claims seeking money damages that are brought directly against the United States. See Robinson, 21 F.3d at 510. In addition, "[b]ecause an action against . . . federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." Id. (citations omitted).

Accordingly, to the extent that Plaintiff is asserting a Bivens claim against the FBI or the United States, it is dismissed for lack of subject matter jurisdiction.

*ii. RICO and Section 1983 Claims*

Similarly, the Court lacks subject matter jurisdiction over Plaintiff's RICO and 42 U.S.C. § 1983 claims because neither statute waives the Government's sovereign immunity.

28

It is well established that the United States has not consented to suit under Section 1983.  See, e.g., Jones v. Nat'l Commc'n & Surveillance Networks, 409 F. Supp. 2d 456, 466 (S.D.N.Y. 2006).  Section 1983 provides a cause of action when plaintiffs are deprived of constitutional rights by any person acting "under color of any statute, ordinance, regulations, custom, or usage, of any State or Territory of the District of Columbia." 42 U.S.C. § 1983.  Federal defendants act under color of federal law, not state law, and thus are not subject to suit under Section 1983. See Nghiem v. United States Dep't of Veterans Affairs, 323 Fed. App'x 16, 18 (2d Cir. 1991) ("With respect to Nghiem's §§ 1981 and 1983 claims, the district court properly dismissed them because these statutes apply only to state actors, and not federal officials." (citations omitted)); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.4 (2d Cir. 1991) ("An action brought pursuant to 42 U.S.C. § 1983 cannot lie against federal officers." (citations omitted)).

Likewise, the United States has not waived its sovereign immunity with respect to RICO claims. See United States v. Bonanno Organized Crime Family of La Cosa Nostra, 879 F.2d 20, 22-26 (2d Cir. 1989); Jones, 409 F. Supp. 2d at 466.

29

Accordingly, Plaintiff's Section 1983 and RICO claims are dismissed.

*iii. FTCA Claims*

The FTCA provides that "a suit against the United States is the exclusive remedy for a suit for damages for injury 'resulting from the negligent or wrongful act or omissions of any employee of the Government while acting within the scope of his office or employment' . . . ." Hightower v. United States, 205 F. Supp. 2d 146, 153 (S.D.N.Y. 2002) (quoting 28 U.S.C. § 2679(b)(1) and citing Rivera v. United States, 928 F.2d 592, 608-09 (2d Cir. 1991)). "The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal court." Celestine v. Mt. Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005); see also 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claims to the appropriate federal agency.").

The Social Security Act precludes FTCA jurisdiction for claims against the government arising under the Social Security Act.  Section 405(h) expressly forecloses FTCA claims

30

against the Government under 28 U.S.C. § 1346 based upon the wrongful withholding of benefits under the Social Security Act. See 42 U.S.C. § 405(h) ("No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under [Title II]").

Moreover, even if such a claim were permissible, there is no jurisdiction under the FTCA unless Plaintiff has first filed an administrative claim, which Plaintiff has failed to do. See 28 U.S.C. § 2675(a). The requirement that an administrative claim be filed and finally denied "is jurisdictional and cannot be waived." Keene Corp. v. United States, 700 F.2d 836, 841 (2d Cir.) (citation omitted), cert. denied, 464 U.S. 864 (1983); see also See Celestine, 403 F.3d at 82 (citations omitted); Robinson, 21 F.3d at 510. Plaintiff has not alleged that an administrative claim was filed. Further, the Commissioner has provided declarations evincing that neither the Social Security Administration nor the FBI has been able to locate such a claim in its records. (See Decl. of Mark Ledford 2 (Dkt. No. 22); Decl. of Susan Harrison 1 (Dkt. No. 23).)

31

Accordingly, because this Court lacks subject matter jurisdiction over Plaintiff's FTCA claim, that claim is dismissed.

*iv. Conclusion*

Because Plaintiff's causes of action under the FTCA, Bivens, Section 1983, and RICO fail as a matter of law, Plaintiffs motion for summary judgment as to those claims is denied and those claims are dismissed. The Court therefore does not reach Defendant's alternative contention that Plaintiff's non-Social Security claims should be dismissed as frivolous.

**Conclusion**

For the reasons set forth above, this case is remanded for further evidentiary proceedings and Plaintiff's non-Social Security claims are dismissed.

It is so ordered.

**New York, NY**
**November  /  , 2011**

_____
ROBERT W.  SWEET
U.S.D.J.

32